[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-16167
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 1, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-01540 CV-AR-S

UNITED STATES OF AMERICA,
ex rel.,

Plaintiff,

PATRICK BRUCE ATKINS, M.D.,

Plaintiff-Appellant,

versus

CHARLES M. MCINTEER, M.D., MARLIYN ELIZABETH LACHMAN, M.D.,
YHAP PSYCHIATRIC SERVICES, INC., NORTHPORT HEALTH SERVICES,
INC., NORTHPORT HEALTH AND REHABILITATION, L.L.C., et. al.,

Defendants-Appellees,

RAINTREE HEALTHCARE CORPORATION,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama.

_____

**(December 1, 2006)**

Before TJOFLAT, PRYOR and ALARCON,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

This is a qui tam action brought in the United States District Court for the Northern District of Alabama by a physician, the relator, against two physicians and several health care providers under the False Claims Act, 31 U.S.C. § 3729, et seq. The district court dismissed the relator's complaint, and he now appeals. The questions lying at the heart of this appeal are whether the complaint's allegations of fraud have been made with the "particularity" required by Federal Rule of Civil Procedure 9(b) and, if not, whether the district court abused its discretion in not granting the relator leave to amend his complaint to cure such deficiency. We answer these questions in the negative and therefore affirm.

I.

The relator, Dr. Patrick Atkins, is an Alabama physician who specializes in adult psychiatry. His private practice includes providing psychiatric services to residents of Alabama skilled nursing facilities ("SNFs") who are eligible for

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Medicare and Medicaid.[1]  Drs. Charles McInteer and Marilyn Lachman,

defendants, also provide psychiatric services to such SNF residents; they do so

through their company, YHAP Psychiatric Services, Inc. ("YHAP"), a defendant.[2]

In March 2003, while Atkins was seeing residents at the Park Manor

Nursing Home, a SNF in Tuscaloosa, Alabama,[3] a nurse showed him a "progress

note" Lachman had entered in the medical records of a Park Manor resident one

day in November 2002.  The nurse said the progress note, which described the

resident's psychiatric condition that day, constituted a false entry because

Lachman could not have seen the resident at that time; the resident had died

several weeks before, in early October.  This revelation prompted Atkins to look

for other false entries Lachman may have made in the medical records of residents

at Park Manor and at other SNFs as well.

In June 2003, after examining entries Lachman and McInteer had made in

---

[1]  Medicare and Medicaid are programs that provide health insurance coverage for elderly and poor patients.  While Medicare is financed and administered by the U.S. federal government, Medicaid is a jointly run state and federal program.  See, e.g., Eleanor D. Kinney, Can the Medicare, Medicaid, and SCHIP Programs Meet the Challenges of Public Health Emergencies?, 58 Admin. L. Rev. 559, 561–562 (2006).

[2]  McInteer and Lachman, husband and wife, received their M.D. degrees from the Autonomous University of Guadalajara, Mexico in 1988.  They incorporated YHAP in 2000 for the purpose of providing psychiatric services to patients in Alabama healthcare facilities.

[3]  Northpoint Health Services, Inc. and/or Northpoint Health and Rehabilitation, LLC, two of the defendants in this case, own and/or operate the Park Manor SNF.

the medical records of residents at Park Manor and other SNFs, Atkins brought

this False Claims Act ("FCA") qui tam action against fifteen parties: McInteer,

Lachman, YHAP, and twelve corporate owners/operators of SNFs.[4] His complaint

contains three counts. Count One alleges that between March 2000 and March

2003, the defendants submitted false and fraudulent Medicare and Medicaid

claims for psychiatric services purportedly rendered to SNF residents and obtained

reimbursement for those services. Specifically, they received reimbursement for

---

[4] These SNF owners and/or operators are Northpoint Heath Services, Inc.; Northpoint Health & Rehabilitation, L.L.C.; Beverly Health and Rehabilitation Services, Inc.; Beverly Enterprises-Alabama, Inc.; Sunbridge Healthcare Corporation; BEP services (Southern) LLC; Mariner Health Central, Inc.; Raintree Healthcare Corporation; National Healthcare Corporation; Haleyville Health Care Center, LLC; Eastern Health System, Inc.; and Capitol Hill Healthcare Center, Inc. The SNF's they own/operate are located in the Alabama cities of Northpoint, Birmingham, Trussville, Oneonta, Arab, Bessemer, Muscle Shoals, Tuscumbia, Gardendale, Guntersville, Anniston, Haleyville, and Montgomery.

The FCA authorizes any private person, called a "relator," United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1308 (11th Cir. 2002), to bring a qui tam action in the name of the United States against anyone who files a claim proscribed by the FCA. The relator's complaint is filed in camera, 31 U.S.C. § 3730(b)(2), remains under seal for at least 60 days, and is not served upon the defendant until the court so orders. 31 U.S.C. § 3730(b)(2).

After filing his complaint, the relator provides the federal government with a copy of the complaint and a written disclosure of substantially all material evidence and information the relator possesses. 31 U.S.C. § 3730(b)(2). Upon receipt of the complaint and the written disclosure, the government has 60 days to intervene in the case. 31 U.S.C. § 3730(b)(2). If the government intervenes, it has "the primary responsibility for prosecuting the action . . . ." 31 U.S.C. § 3730(c)(1). "If the Government elects not to proceed with the action, the [relator has] the right to conduct the action." 31 U.S.C. § 3730(c)(3).

The relator stands to gain significantly from bringing a qui tam action. If he successfully prosecutes the case, the court awards him between 25 and 30 percent of the recovery proceeds. 31 U.S.C. § 3730(d)(1). If the government prosecutes the action, the relator still receives between 15 and 25 percent of the recovery proceeds. 31 U.S.C. § 3730(d)(2).

In this case, the government elected not to intervene, leaving Atkins to prosecute the action alone.

4

psychiatric services that were: (1) not rendered, (2) not medically necessary, (3) the result of improper "upcoding," (4) grounded in psychiatric evaluations provided by unqualified staff personnel, (5) based upon "pre-formed," predetermined sets of patient evaluations, diagnostic codes, and treatment plans, and (6) provided with substandard levels of care.[5]  Count Two alleges that the defendants conspired with one another to file the false claims referred to in Count One.  Count Three, based on Alabama tort law, alleges that the filing of the false claims referred to in Count One constituted fraud on the United States.[6]

The defendants severally moved the district court to dismiss Atkins's

---

[5]  Although the complaint cites specific examples of the reimbursements that allegedly give rise to FCA liability – by identifying particular patients, treatment dates, and the corresponding content of McInteer's and Lachman's medical progress notes for those patients – the complaint fails to identify a single false claim that any of the defendants purportedly submitted to the government.

[6]  Atkins's complaint is a typical shotgun pleading.  Sixty-eight paragraphs precede Count One, which incorporates those paragraphs and adds 10 paragraphs.  Count Two incorporates Count One and adds six paragraphs.  Count Three incorporates Count Two and adds eight paragraphs.  Count Three, by incorporating Count Two's conspiracy allegations, alleges that in addition to jointly and severally defrauding the United States, the defendants conspired to do so.

Pleading claims in this fashion imposes a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts.  We have condemned this sort of pleading on several occasions.  See, e.g., M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 n.1 (11th Cir. 2006); Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 nn. 9–10 (11th Cir. 2002) (observing that "the aggregate negative effects of shotgun pleadings on trial courts have been noted with great concern by the court").  When faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader.  See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001).

5

complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief, and, alternatively, under Federal Rule of Civil Procedure 9(b) for failure to allege fraud with sufficient "particularity" to enable the defendants to frame a responsive pleading.[7] After considering Atkins's response to the defendants' motions, the court dismissed the complaint with prejudice and entered final judgment for the defendants.[8]

The court dismissed Atkins's FCA claims, in Counts One and Two, on two grounds. First, although the defendants had not moved to dismiss Counts One and Two for lack of subject matter jurisdiction under 28 U.S.C. § 1331,[9] the court, relying on the D.C. Circuit's decision in United States, ex rel. Totten v. Bombardier Corp., 380 F.3d 488 (D.C. Cir. 2004), concluded that it lacked § 1331 jurisdiction to entertain those counts.[10] Totten held that the defendant's presentation of a fraudulent claim to the National Railroad Passenger Corporation

---

[7] Rule 9(b) states, in pertinent part: "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).

[8] The district court's order addressed the motions to dismiss only 14 of the fifteen defendants. The court had previously dismissed Raintree Healthcare Corporation from the case (without prejudice) for plaintiff's failure to complete timely service upon Raintree.

[9] Section 1331 states: "The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[10] A district court must examine its subject matter jurisdiction even though the parties do not challenge it. See, e.g., In re Optical Technologies, Inc., 425 F.3d 1294, 1307 (11th Cir. 2005); Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999).

6

did not constitute the presentation of a fraudulent claim "to an officer or employee of the United States Government" so as to state a claim under the FCA.[11] In the district court's view, the only entity McInteer, Lachman and the other defendants defrauded was a grantee of federal funds, not the federal government itself. Since the defendants had not defrauded the federal government, Atkins could not state a claim under the FCA;[12] therefore, the court reasoned, he could not invoke the court's § 1331 jurisdiction.

Second, assuming the presence of § 1331 jurisdiction and that, as a matter of notice pleading, Atkins's complaint asserted a cause of action cognizable under the FCA, the court held that his allegations of fraud failed to satisfy the requirements of Rule 9(b). The court dismissed Count Three of the complaint on

---

[11] The Totten court reasoned that presentation of a false claim to a grantee of federal funds does not constitute presentation "to an officer or employee of the Untied States Government" for 31 U.S.C. § 3729(a)(1) purposes – and FCA liability, therefore, does not attach – unless: (1) "the Government provides the funds to the grantee upon presentment of a claim to the Government," as opposed to cases in which "the money has already been or is being provided by the Federal Government"; (2) "after the grantee presents the claim, the Government provides the funds directly to the claimant"; or (3) "the Government – again, upon presentment of the claim – reimburses the grantee for funds that the grantee has already disbursed to the claimant." Totten, 380 F.3d at 493 (quotations omitted).

[12] In discussing whether Atkins had stated a case for FCA relief, the court concluded that the claims Atkins was actually presenting arose under the Nursing Home Reform Act, 42 U.S.C. § 1396r, not the FCA. Because we conclude that Atkins's complaint failed to state claim under the FCA, we need not, and thus do not, consider whether the complaint stated a cause of action under the Nursing Home Reform Act.

7

the ground that Atkins lacked standing as a private attorney general under Alabama law to sue on behalf of the United States.

Atkins now appeals the district court's judgment. He presents the following arguments: (1) the district court has subject matter jurisdiction under 28 U.S.C. § 1331 because he is asserting a claim under the FCA; (2) the allegations of his complaint are sufficient to state a claim for relief; (3) if his allegations are insufficient to state a claim for relief or to satisfy Rule 9(b)'s requirement that they be "stated with particularity," we should vacate the judgment and remand the case with the instruction that the district court grant him leave to amend his complaint. We consider Atkins's arguments in order.[13]

In resolving this appeal, we address first, in part II, the subject matter jurisdiction issue. We conclude that the district court had jurisdiction under 28 U.S.C. § 1331 and then consider, in part III, the question of the legal sufficiency of Atkins's complaint to state a claim for relief. The district court held that if Totten were inapplicable and thus did not require dismissal for lack of jurisdiction, the complaint still failed to meet the pleading-with-particularity requirement of Rule 9(b). We similarly conclude that the complaint failed to satisfy the contours of

---

[13] Atkins does not raise in his appellate brief the dismissal of Count Three, based on Alabama tort law, for lack of standing as a private attorney general. We consider the claim abandoned, and thus we do not address it.

8

Rule 9(b). In part IV, we take up the question of whether the district court abused its discretion in failing to grant Atkins leave to amend his complaint to cure the Rule 9(b) deficiency. Part V summarizes our holdings.

## II.

The district court read <u>Totten</u> for the proposition that if a plaintiff fails to state a claim under the FCA, his action does not arise under the laws of the United States; therefore, his complaint must be dismissed for lack of subject matter jurisdiction.[14] We disagree with the court's reading. <u>Totten</u> does not present a jurisdictional rule. In fact, the word "jurisdiction" does not appear in the twenty-nine pages that the <u>Totten</u> opinion occupies in the Federal Reporter. The notion that <u>Totten</u> bars subject matter jurisdiction conflates the "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) with federal question jurisdiction under 28 U.S.C. § 1331. As the Supreme Court explained in <u>Bell v. Hood</u>, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946), "Jurisdiction. . .is not defeated. . .by the possibility that the averments might fail to state a cause of action on which [the plaintiffs] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and

---

[14] The parties agree that <u>Totten</u> does not hold that a district court lacks subject matter jurisdiction under 28 U.S.C. § 1331 if the plaintiff fails to state a claim for relief under the FCA.

not for a dismissal for want of jurisdiction." Id. at 682, 66 S. Ct. at 776. In sum, it is clear that the district court had subject matter jurisdiction in this case. Given this conclusion, we consider whether Atkins's complaint passes muster under Rule 9(b).

## III.

The False Claims Act subjects to civil liability "[a]ny person who knowingly presents, or causes to be presented, to . . . the United States Government . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1), as well as "[a]ny person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," 31 U.S.C. § 3729(a)(3). "The submission of a [false] claim is. . .the sine qua non of a False Claims Act violation." United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1311 (11th Cir. 2002) (citation omitted). "Without the presentment of . . . a claim, . . .there is simply not actionable damage . . . . Id. In the healthcare context such as the one before us, "[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Id.

FCA claims must also be stated with particularity pursuant to Rule 9(b).

10

Clausen, 290 F.3d at 1308–09 ("Rule 9(b) [applies] to actions under the False Claims Act."). Particularity means that "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." Clausen, 290 F.3d at 1310 (quoting Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 567–68 (11th Cir. 1994) (citing Durham v. Bus. Mgmt. Assoc., 847 F.2d 1505 (11th Cir. 1988))).

> Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.

Clausen, 290 F.3d at 1311 (quoting Rule 9(b)).

> We cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the "true essence of the fraud" of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme.

Clausen, 290 F.3d at 1312 n.21. Rather, "if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government." Clausen, 290 F.3d at 1311(first emphasis added). As the district court stated in its order dismissing Atkins's complaint, "[t]he whistle must be blown not only loudly, but with Rule

11

9(b) particularity in the complaint before the courts will listen." United States ex rel. Atkins v. McInteer, Civ. No. 03-AR-1540-S (N.D. Ala. 2004) (emphasis added).

We evaluate whether the allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b) on a case-by-case basis. In Clausen, we held that a competitor of a company that specialized in providing medical testing services to long-term care facilities did not plead his FCA claim against the company with sufficient Rule 9(b) particularity to withstand a motion to dismiss. Clausen, 290 F.3d at 1302–03. The complaint "allege[d] that [the company] engaged in a multi-faceted, decade-long campaign to defraud the Government as a result of its testing services." Id. at 1303. Specifically, the complaint claimed that the defendant "performed unauthorized, unnecessary or excessive medical tests . . . and knowingly submitted bills for [that] work to . . . the Government." Id. The relator named six schemes in which he averred that the defendant had engaged. Id. His complaint went into such detail as to identify specific long-term care facilities, patients, dates of testing, and testing procedures. Id. at 1315.

Although the relator stated with particularity the circumstances comprising the elements of the alleged scheme to defraud, his complaint "failed to meet the minimum pleading requirements for the actual presentment of any false claims."

12

Id. at 1315 (emphasis added). "No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described, . . . [and not one] copy of a single bill or payment was provided." Id. at 1312. We held that although Rule 9(b) "does not mandate all of [that] information for [each] alleged claim[,]. . . some of [the] information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." Id. at 1312 n.21; Corsello v. Lincare, 428 F.3d 1008, 1013 (11th Cir. 2005) (holding that "[b]ecause it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances").

On the other hand, in Hill v. Morehouse Med. Assoc., Inc., No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) (unpublished),[15] we held that a former billing and coding employee of a medical care provider satisfied Rule 9(b) where her complaint claimed that she had firsthand knowledge that her employer submitted false claims. Id. at *5. Unlike the relator in Clausen, however, the Hill relator worked for seven months "in the very department where she alleged the fraudulent billing schemes occurred." Hill, 2003 WL 22019936, at *4.

---

[15] An unpublished opinion, Hill is not binding precedent. 11th Cir. R. 36-2. Even if Hill were a published opinion, the prior panel rule would dictate that Clausen supercedes Hill to the extent that Hill is inconsistent with Clausen.

[S]he ha[d] firsthand information about the [defendant's] internal billing practices and the manner in which the fraudulent billing schemes were implemented. Moreover, she alleged that she observed [the defendant's] billers, coders, and physicians alter various CPT[16] and diagnosis codes over the course of [her] seven months and thus submit false claims for. . .reimbursement to the government. . . . Most important, . . .unlike the plaintiff in [Clausen], [the Hill plaintiff] was privy to [the defendant's] files, computer systems, and internal billing practices. . .because she worked in [the defendant's] billing and coding department for seven months.

Hill, 2003 WL 22019936, at *4.

In the case at hand, the complaint fails rule 9(b) for want of sufficient indicia of reliability to support the assertion that the defendants submitted false claims. As the plaintiff did in Clausen, Atkins has described in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims. He cites particular patients, dates and corresponding medical records for services that he contends were not eligible for government reimbursement. Just like the Clausen plaintiff, though, Atkins fails to provide the next link in the FCA liability chain: showing that the defendants actually submitted reimbursement claims for the services he describes. Instead, he portrays the scheme and then summarily concludes that the defendants submitted false claims to the government for reimbursement.

---

[16] "CPT" stands for "current procedural terminology." Hill, 2003 WL 22019936, at *1.

14

In his complaint, Atkins does not profess to have firsthand knowledge of the defendants' submission of false claims. He is a psychiatrist responsible for the provision of medical care, not a billing and coding administrator responsible for filing and submitting the defendants' claims for reimbursement. He rotated through a single facility where he heard rumors from staff and observed records of what he believed to be the shoddy medical and business practices of two other psychiatrists. He then brought suit against those two psychiatrists, their company, and the SNF's where, he alleges, those two psychiatrists had provided psychiatric care over a three-year period.

The <u>Hill</u> relator, by contrast, personally observed the behavior of which she complained during the seven months she spent in her employer's billing and coding department, and then brought her action against her employer. Atkins's complaint not only fails to contain an indicia of reliability approaching the level of reliability found in the <u>Hill</u> allegations, it sweeps with a much broader brush by naming as defendants SNF's into which Atkins never stepped foot. Faced with these pleading deficiencies, we would be hard pressed to say that Atkins's complaint satisfies the particularity requirement of Rule 9(b).

The public policy underpinnings of Rule 9(b), the FCA, and <u>qui tam</u> actions mandate this conclusion. "The particularity rule serves an important purpose in

15

fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Durham, 847 F.2d at 1511 (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).

> When a plaintiff does not specifically plead the minimum elements of [his] allegation, it enables [him] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and at worst, . . .baseless allegations used to extract settlements.

Clausen, 290 F.3d at 1314 n.24. "The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." United States v. Lab. Corp. of Am., No. CIV.A.1: 97CV2200TWT 2001 WL 1867721, at *1 (N.D. Ga. May 16, 2001), quoted in Clausen, 290 F.3d at 1307.

> If given such a ticket, the next stage of [the] litigation is clear. The Plaintiff will request production of every. . .claim submitted by the Defendant [during the time period corresponding to Plaintiff's claims]. At that point, the Defendant may decide to settle the case to avoid the enormous cost of such discovery and the possible disruption of its ongoing business. On the other hand, the Defendant may choose to resist the discovery. In that case, the Court will be presented with the dilemma of allowing an unlimited fishing expedition or no discovery at all because of the difficulty in fashioning logical and principled limits on what has to be produced. The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits.

16

United States ex rel. Clausen v. Lab. Corp. of Am., 198 F.R.D. 560, 564 (N.D. Ga. 2000), aff'd, 290 F.3d 1301 (11th Cir. 2002).

Requiring relators to plead FCA claims with particularity is especially important in light of the quasi-criminal nature of FCA violations (i.e., a violator is liable for treble damages). Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim – the possibility of recovering between fifteen and thirty percent of a treble damages award – does not precipitate the filing of frivolous suits.

The nature of the qui tam action supports our view of this case as well. The qui tam relator brings the action on behalf of the federal government. The relator stands in the government's shoes – in neither a better nor worse position than the government stands when it brings suit. Accordingly, we cannot furnish a qui tam relator with an easier burden than the government would bear if it intervened and assumed the prosecution of the case. Permitting a qui tam relator to go forward with his complaint, when we would not allow the government to proceed, might encourage the government to evade its burden by merely recruiting a willing relator to file a qui tam action.[17]

_____

[17] We do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrong doing insufficient or the qui tam relator's allegations for fraud to be without merit. In any given case, the government may have a host of reasons for not pursuing a claim.

In fine, the public policies behind Rule 9(b), the FCA, and qui tam actions required the district court to dismiss Atkins's complaint under Rule 9(b); for it lacks sufficient indicia of reliability to haul the defendants into court.[18]

## IV.

Atkins contends that the district court abused its discretion in failing to grant his request for leave to amend his complaint. The request was contained in his memorandum in opposition to the defendants' motions to dismiss.[19]

----

We note, however, that the government already possesses the claims–false or otherwise–a potential defendant has submitted for payment. The government can, therefore, access those claims on its own and evaluate any FCA liability that it believes should attach before determining whether to bring suit or intervene in a relator's qui tam action.

Accordingly, unlike qui tam relators, when the government brings an FCA action or intervenes in a qui tam action, we may assume that it does not do so solely to use the discovery process as a fishing expedition for false claims, for it already possesses that which the qui tam relator may need discovery to find. That is not to say, as noted above, that the government's absence from the fray means that the relator's cause is meritless.

[18] In his brief on appeal, Atkins, citing Conley v. Gibson, 335 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), argues that the district court should not have dismissed his FCA claims because it did not appear beyond doubt that he could prove no set of facts in support of his claims that would entitle him to relief. In Conley, the Court, using Fed. R. Civ. P. 8(a)(2) and (f) for a lens, examined the plaintiffs' complaint and concluded that there was "no doubt that [plaintiffs'] complaint adequately set forth a claim and gave the [defendants] fair notice of its basis." 335 U.S. at 48, 78 S. Ct. at 103. Examining Atkins's complaint with the lens provided by those rules and Fed. R. Civ. P. 9(b), we find no error in the district court's dismissal of Atkins's FCA claims. Nothing within the four corners of the complaint indicates that Atkins, via an amended complaint, could cure the Rule 9(b) deficiencies we have discussed in the text supra.

In his response to the defendants' motions to dismiss his complaint, Atkins claimed that he could cure any Rule 9(b) insufficiencies the court might find, and he contends on appeal that the court abused its discretion in not granting him leave to amend. We address this issue, which was not presented to the Conley Court, in part IV, infra.

[19] In his memorandum in opposition to the defendants' motions to dismiss his complaint, Atkins attached, as Exhibit A, the affidavit of YHAP's office manager, Tammy Moore, stating

18

In its order granting the defendants' motions to dismiss, the court made no mention of Atkins's request for leave to amend. The court's failure to mention the request yields two inferences: (1) the court failed to notice the request at all, or (2) the court noticed the request and denied it sub silentio. Atkins could have ascertained what the court thought about the merits of his request by moving the court pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend its judgment,[20] asking the court explicitly to rule on his request. Alternatively, pursuant to Federal Rule of Civil Procedure 60(b)(6),[21] he could have moved the court for relief from the "operation of the judgment," and if the court granted his motion, he could ask for leave to amend his complaint.[22] Atkins chose another

---

that McInteer, Lachman, and YHAP had "submitted false claims to Medicare and Medicaid" and that they had "received Medicare and Medicaid reimbursement which they were not legally entitled to receive." Anticipating that the court might find the allegations of his FCA claims insufficient under Rule 9(b), Atkins stated that Moore's affidavit was being presented "to suggest . . . that if the Court should find more specificity to be required under the initial complaint, the appropriate remedy would not be dismissal of the complaint . . . but, rather, an opportunity for [him] to amplify his allegations by way of amendment." Relator's Mem. In Opp'n to Defs.' Mot. to Dismiss at 20.

[20] Fed. R. Civ. P. 59(e) states: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

[21] Fed. R. Civ. P. 60(b)(6) states, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."

[22] Fed. R. Civ. P. 15(a) has no application once the district court has dismissed the complaint and entered final judgment for the defendant. Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO, 724 F.2d 1552, 1556 (11th Cir. 1984). Wright, Miller &

course, however, by directly appealing the district court's judgment. That judgment, since it ended the litigation, disposed of Atkins's request for leave to amend by operation of law _if_ his request was the functional equivalent of a motion for an order granting him leave to amend his complaint.

We pose this condition because, under Federal Rule of Civil Procedure 7(b)(1), a party obtains a court order granting it relief by filing a motion. The Rule states, in pertinent part: "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."

If, for example, a plaintiff wants to amend his complaint (prior to the entry of judgment), he does so by moving the court for leave to do so pursuant to Federal Rule of Civil Procedure 15(a).[23] Furthermore, as this court held in Long v.

_____

Kane, Federal Practice and Procedure, § 1489. Post-judgment, the plaintiff may seek leave to amend if he is granted relief under Rule 59(e) or Rule 60(b)(6). Id.; Czeremcha, 724 F.3d at 1556; Ahmed v. Dragovich, 297 F.3d 201, 207-209 (3d Cir. 2002); Lindaur v. Rogers, 91 F.3d 1355, 1356 (9th Cir. 1996); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 n. 1 (5th Cir. 1981) (former Fifth Circuit case). A Rule 60(b)(6) motion filed within 10 days of the entry of judgment tolls the time for taking an appeal. See Fed. R. App. P. 4(a)(4)((A)(vi).

[23] Rule 15(a) provides: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended

20

Satz, 181 F.3d 1275 (11th Cir. 1999), the movant must either attach a copy of the proposed amendment to the motion or set forth the substance thereof. As the Eighth Circuit explained in Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999), a plaintiff "should not be allowed to amend [his] complaint without showing how the complaint could be amended to save the meritless claim."

In Long, as in the case before us, the request for leave to amend was included in a memorandum the plaintiff filed in opposition to the defendants' motions to dismiss the complaint, and, as here, the plaintiff failed to attach the proposed amendment or set forth the substance of the proposed amendment. Long, 181 F.3d at 1279.[24] Therefore, assuming that Atkins's request was the functional equivalent of a motion, we affirm the district court's rejection thereof because it failed to include the proposed amendment or the substance thereof as required by Long.[25]

---

pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders." Fed. R. Civ. P. 15(a).

[24] We reiterated Long's holding – that a motion for leave to amend must attach the proposed amendment or set forth the substance thereof – in Doe v. Pryor, 344 F.3d 1282 (11th Cir. 2003), in affirming the district court's denial of the plaintiffs' Rule 59(e) motion to reconsider which included a request for leave to amend the complaint.

[25] Atkins argues that the substance of his proposed amendment to his complaint is contained in Exhibit A to his memorandum in opposition to the defendants' motions to dismiss,

21

V.

In conclusion, we hold that the district court had subject matter jurisdiction under 28 U.S.C. § 1331 to entertain the complaint in this case. Turning to the merits of this appeal, we conclude that the complaint is insufficient under Rule 9(b) and that the district court did not abuse its discretion by dismissing Atkins's complaint with prejudice, i.e., without leave to amend.

AFFIRMED.

---

the affidavit of Tammy Moore. Atkins's memorandum does not indicate precisely where in his complaint Moore's information would appear so as to eliminate the Rule 9(b) problems outlined in part III., supra. Nor does his opening brief to us.