**UNITED STATES ex rel. Ronald STEPHENS, M.D., Thomas Powell, and Steve Doepker, Plaintiffs,**

v.

**TISSUE SCIENCE LABORATORIES, INC., f/k/a Tissue Science Laboratories, PLC, and Tissue Science Laboratories, PLC, Defendants.**

Civil Action No. 1:07–CV–2357–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 13, 2009.

---

Neeli Ben–David, Ally Quillian Yates, U.S. Attorney's Office, D. Brandon Hornsby, Office of Brandon Hornsby, Marlan Bradley Wilbanks, Tyrone M. Bridges, Wilbanks & Bridges, LLP, Atlanta, GA, for Plaintiffs.

Michael Edward Paulhus Phyllis Buchen Sumner, Richard L. Shackelford, King & Spalding, LLP, Atlanta, GA, for Defendants.

*ORDER*

ORINDA D. EVANS, District Judge.

This *qui tam* civil action, brought pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., is before the Court on Defendants Tissue Science Laboratories, Inc., and Tissue Science Laboratories, PLC's, motion to dismiss [Doc. # 29]. Relators Ronald Stephens, Thomas Powell, and Steve Doepker ("Relators") have filed a response in opposition [Doc. # 36], to which Defendants have filed a reply [Doc. # 41]. Relators sought and were granted

leave to file a sur-response [Doc. # 44], which they filed on April 22, 2009 [Doc. # 45]. Defendants also sought and were granted leave to file a sur-reply [Doc. # 47], which they filed on May 12, 2009 [Doc. # 48]. For the following reasons, Defendants' motion to dismiss is granted.

### I. *Procedural and Factual History*

The following facts are drawn from the averments of the Amended Complaint. [Doc. # 16].

Relators are former sales representatives of Defendants Tissue Science Laboratories, Inc. and Tissue Science Laboratories, PLC (collectively "Defendants" or "TSL"). Amended Complaint at ¶ 35 [Doc. # 16]. They brought this *qui tam* action, alleging that TSL engaged in off-label marketing of the surgical implant Permacol. *Id.* at ¶¶ 2, 3. According to Relators, this off-label marketing led to the submission of fraudulent claims to the federal government and injury to patients.[1] *Id.* at ¶¶ 4, 5. Specifically, Relators allege that TSL made fraudulent claims about Permacol's FDA approved uses, which led doctors to use Permacol in situations for which it was not approved. *Id.* at ¶ 5. Permacol was then included in the charges submitted by hospitals for Medicare and Medicaid reimbursement, and in the charges submitted directly by TSL to Veterans Administration and U.S. Army medical centers. *Id.* at ¶¶ 6, 7. According to Relators, reimbursement for Permacol's off-label use was not permitted under the appropriate federal regulations, making the submission and payment of these claims fraudulent. *Id.* at ¶ 4.

Permacol is a surgical implant based on collagen derived from porcine dermis, and

1. Only the False Claims Act claims are before this Court. *See* [Docs. # 1, # 16].

is intended for use in patching large, complex hernias. *Id.* at ¶¶ 21, 33. In February 2000, the FDA issued a clearance letter for Permacol, finding that it was substantially equivalent to four predicate devices. *Id.* at ¶ 162. Under the FDA's regulatory scheme, a device that receives premarket clearance based on substantial equivalence to predicate devices may only be marketed based on the same intended use as the predicate devices. *Id.* at ¶¶ 109–113. The device manufacturer may not market the device for an intended use that is not identified in the premarket clearance letter. *Id.* at ¶ 114. Although Relators do not include the language of the premarket clearance letter in their pleadings, the implication from their allegations is that the allowable intended uses for Permacol did not include use in the presence of infection.

Relators contend that TSL disseminated false information about Permacol's approved uses, i.e., uses that were not included in the premarket clearance letter, in order to induce payment for Permacol from government payors. *Id.* at ¶¶ 49, 50. Specifically, Relators allege that TSL gave its sales representatives the following false information about Permacol:

a) That Permacol can be safely used in the presence of infection or contamination;

b) That Permacol does not produce an inflammatory response in the body and therefore does not promote painful and potentially dangerous adhesions to surrounding tissue;

c) That Permacol is permanent;

d) That Permacol is the only product that is permanent, may be used in the presence of infection and does not provoke an inflammatory response;

e) That Permacol had been "FDA approved";

f) That Permacol was FDA cleared for use in infected or contaminated or potentially infected or contaminated wound sites; and

g) That prior to December 2004, Permacol was specifically indicated for the repair of parastomal hernias.

*Id.* at ¶ 50. Relators refer to these claims collectively as "Defendants' off-label claims."

In January 2002, Mike Waller ("Waller"), TSL board member and Vice President for Sales and Marketing for North America, solicited Relators Stephens and Powell to join the TSL sales team. *Id.* at ¶¶ 57, 61. Waller told both Stephens and Powell that Permacol was extremely marketable because it was a permanent implant that did not cause an inflammatory response, foreign body reaction, or adhesions, and that it could be placed directly against the bowel and used in the presence of infection. *Id.* at ¶¶ 50, 63. Between April 2002 and September 2004, Relator Stephens and Waller, along with other TSL personnel, conducted trainings with sales firms, in which the TSL representatives made the off-label claims regarding Permacol. *Id.* at ¶¶ 67–69.

In October 2004, Relators Stephens and Powell received a phone call regarding the failure of Permacol when used in the presence of infection. *Id.* at ¶ 72. This was the first of four calls in a twenty-four hour period. *Id.* When Relators Powell and Stephens relayed these calls to Waller, his response was "Don't tell anyone about this." *Id.* at ¶ 73. Relators allege that Permacol has repeatedly failed in the presence of infection, and that TSL has concealed this information from sales repre-

sentatives, customers/surgeons, the public and the FDA. *Id.* at ¶¶ 74, 76.

*Sales of Permacol to Hospitals and Federal Medical Facilities*

Relator Stephens avers that he sold ten pieces of Permacol for use in infected, contaminated, or potentially infected or contaminated wounds to Eisenhower Army Medical Center in Fort Gordon, Georgia. *Id.* at ¶¶ 77–80. According to an article cited by Relators, Eisenhower Army Medical Center personnel used Permacol because they were concerned that a prosthetic mesh would lead to infection. *Id.* at ¶¶ 81, 82.

Relator Doepker avers that he sold three pieces of Permacol for use in infected, contaminated, or potentially infected or contaminated wounds to the Veterans Administration Medical Center in Dayton, Ohio. *Id.* at ¶¶ 83–85. Relator Stephens avers that he sold one piece of Permacol for use in infected, contaminated, or potentially infected or contaminated wounds to the Madigan Army Medical Center in Fort Lewis, Washington. *Id.* at ¶ 86. Relators also aver that TSL Sales Representative Jim Miller sold one piece of Permacol for use in infected, contaminated, or potentially infected or contaminated wounds to the Veterans Administration Medical Center in Birmingham, Alabama. *Id.* at ¶ 87.

Relator Powell avers that, using Defendants' Off-label Claims, he marketed Permacol to an Atlanta surgeon, Dr. J.P.L. *Id.* at ¶ 88. Based on the off-label claims, Dr. J.P.L. used Permacol to repair a complex hernia in patient B.M. *Id.* at ¶ 89. Patient B.M. was enrolled in Medicare and Medicaid, and both Dr. J.P.L. and Northside Hospital billed Medicare and Medicaid for the services and expenses related to B.M.'s hernia repair, including the use of Permacol. *Id.* at ¶ 91.

Patient B.M.'s Permacol implant degraded in the presence of infection and a tear developed in the implant. *Id.* at ¶ 94. B.M. went into septic shock and was treated at Fayette Community Hospital. *Id.* at ¶¶ 94, 95. Fayette Community Hospital submitted claims to Medicare and Medicaid for patient B.M.'s treatment. *Id.* at ¶ 96. Patient B.M. subsequently underwent emergency surgery at Northside Hospital, which also billed Medicare and Medicaid for B.M.'s treatment. *Id.* at ¶¶ 98, 99.

On September 27, 2007, Relators filed suit against TSL, alleging violations of the False Claims Act. [Doc. # 1]. On June 24, 2008, the United States decided not to intervene in the case, and the Complaint was unsealed and served upon Defendants, consistent with the provisions of the FCA. [Docs. # 9, # 10]. On December 1, 2008, Relators filed an Amended Complaint, which contains counts for violation of the FCA through false submissions to Medicare and Medicaid, and to the Veterans Administration and U.S. Army. [Doc. # 16 at 49–51]. On January 30, 3009, TSL filed the instant motion to dismiss, contending that the Amended Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

## II. *Standard of Review*

In order to state a claim for relief, Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). When ruling on a defendant's motion to dismiss, the Court must accept the plaintiff's allegations as true and view them in the light

most favorable to the plaintiff. *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. Therefore, the complaint must contain some alleged facts that are "enough to raise a right to relief above the speculative level." *Id.* at 1965.

When fraud is alleged, a higher pleading standard applies: the plaintiff "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). The standard is satisfied if the complaint alleges the "facts as to time, place, and substance of the defendant's alleged fraud." *Cooper v. Blue Cross & Blue Shield of Fla., Inc.,* 19 F.3d 562, 567 (11th Cir.1994). A complaint that fails to meet this standard is subject to dismissal. *See Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316–17 (11th Cir.2007).

## III. *Discussion*

TSL argues that Relators' complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and for failure to plead fraud with the required specificity under Rule 9(b). Relators contend that they have met all pleading requirements and that the motion to dismiss should therefore be denied.

## A. *False Claims Act Framework*

■ The False Claims Act was passed by Congress in 1863 to combat profiteering by Union Army suppliers during the Civil War. *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1496–97 (11th Cir.1991). The FCA prohibits "false or fraudulent claims to government payment." *Id.* at 1496 (internal quotation marks omitted). Specifically, the False Claims Act states:

> any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 ... plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).[2] The FCA permits private citizens to bring claims on behalf of the United States. 31 U.S.C. § 3730(b). These plaintiffs are known as *qui tam* relators. To state a cause of action under the FCA, a relator must prove three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with

---

2. On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA") took effect. The FERA amended certain provisions of the FCA. *See* Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111–21, § 4, 123 Stat. 1617. Although most of the changes apply only to conduct on or after the day of enactment, changes to § 3729(a)(1)(B) are effective retroactive to June 7, 2008, and apply to all claims under the FCA pending on or after that date. *Id.* at § 4(f). Because this action was pending on June 7, 2008, the amended § 3729(a)(1)(B) applies to this action. Relators were granted leave to file this supplemental authority on June 5, 2009. [Doc. # 52].

the knowledge that the claim was false." *United States ex rel. Walker v. R & F Props. of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir.2005).

In addition, courts have imposed a materiality requirement on each of the provisions of the FCA. *See, e.g., United States ex rel. Costner v. United States*, 317 F.3d 883, 887 (8th Cir.2003); *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732–33 (7th Cir.1999); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir.1999); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997). While not every circuit has adopted the materiality requirement, no circuit has rejected it outright; those circuits that have not imposed a materiality requirement have simply not yet addressed the issue. *See, e.g., Mikes v. Straus*, 274 F.3d 687, 697 (2nd Cir.2001) (declining to consider whether the FCA contains a separate materiality requirement); *but see United States ex rel. Cantekin v. Univ. of Pittsburgh*, 192 F.3d 402, 415 (3rd Cir.1999) (expressing doubt that the FCA contains a materiality requirement, but declining to decide the issue). The United States Court of Appeals for the Eleventh Circuit is among those courts that have not yet addressed the materiality requirement.

■ The materiality element requires that the false or fraudulent conduct or statements be material to the claim for payment from the federal fisc. *See United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 624 (S.D.Tex. 2001). The circuit courts of appeal have split over the appropriate standard for determining if the materiality requirement has been met. The United States Court of Appeals for the Seventh Circuit requires a showing that the falsity was a prerequisite to government payment, *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir.2005), while the United States Court of Appeals for the Fourth Circuit requires only that "the false statement [have] a natural tendency to influence agency action or is capable of influencing agency action." *Harrison*, 176 F.3d at 785. The Eleventh Circuit has not adopted either of these standards as it has not yet considered the issue of a materiality requirement under the FCA.

The materiality requirement for FCA claims is widely-applied and well-established. *See United States v. Bourseau*, 531 F.3d 1159, 1170–71 (9th Cir.2008) (holding that the FCA contains a materiality requirement and noting that the holding is consistent with the law of the First, Fourth, Fifth, Sixth, and Eighth Circuits). Only the United States Court of Appeals for the Third Circuit has cast doubt on the materiality requirement, but did so in dicta. *See Cantekin*, 192 F.3d at 415. Even though the Eleventh Circuit has not addressed the issue, in the face of all of this authority supporting a materiality requirement in the FCA, the Court concludes that the FCA contains a materiality requirement.

■ Claims brought pursuant to the FCA must also meet the particularity requirement of Rule 9(b). *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir.2006). "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* (internal quotation marks omitted).

### B. *Relators' FCA Claims*

Relators allege violations of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) through the

submission of false or fraudulent claims to Medicare and Medicaid (Count I) and the Veterans Administration and the U.S. Army (Count II). [Doc. # 16 at 49–51]. Because the factual allegations are specific and distinct as to each of these counts, each count is considered separately below.

### 1. Medicaid and Medicare Claim Submissions

Relators allege that TSL sales representatives, including some of the Relators, made false and fraudulent statements about the FDA-approved uses of Permacol to surgeons. The false statements led surgeons to use Permacol in patients for "off-label" uses, which are not reimbursable under Medicare and Medicaid. The hospitals submitted claims to Medicaid and Medicare for reimbursement for surgeries that included off-label uses of Permacol, which Relators contend constitute the submission of false claims to a government payor. Relators allege the specifics of one such instance—Dr. J.P.L. and patient B.M.

TSL argues that these allegations fail to state a claim for relief under Rule 12(b)(6) and fail to meet the particularity requirements of Rule 9(b). In regard to the Rule 12(b)(6) argument, TSL contends that Relators do not identify an actual false claim, fail to establish a causal link between the representations and the doctors' use of Permacol, and fail to meet the materiality requirement. In regard to the Rule 9(b) argument, TSL argues that Relators simply fail to provide sufficient detail regarding the off-label marketing scheme.

■ Accepting the allegations of the Amended Complaint as true, the Court finds that Relators have sufficiently alleged the causation and false claim elements. Relator Powell avers that, using Defendants' Off-label Claims, he marketed Permacol to an Atlanta surgeon, Dr. J.P.L., and that Dr. J.P.L. used Permacol to repair a complex hernia in patient B.M. based on the off-label claims. [Doc. # 16 at ¶¶ 88, 89]. At this stage in the litigation, these claims sufficiently allege causation.

■ Similarly, the allegations of false claims are sufficient to withstand a motion to dismiss. Relators allege that Dr. J.P.L. used Permacol in the presence of infection and Dr. J.P.L.'s notes state that the hernia was inflamed. Drawing all inferences in Relators' favor, these claims create a sufficient allegation that Permacol was used "off-label," i.e., in the presence of infection.

In regard to the materiality requirement, TSL argues that the Medicare reimbursements at issue in this case were made under the "prospective payment system" ("PPS"). Under this system, a predetermined amount is paid for each Medicare admission based on the Diagnosis Related Group ("DRG") assigned to the patient's illness. See 42 C.F.R. §§ 412.1, 412.60. The fixed reimbursement amount includes payment for "operating and capital-related costs" and is made "on the basis of prospectively determined rates and applied on a per discharge basis." 42 C.F.R. § 412.1. Although Relators dispute the legal effect of the PPS system on this case, they do not argue that Medicare reimbursements to the hospitals were not based on the patients' DRG. See [Doc. # 36 at 12–23, Doc. # 45 at 6–12].

Several courts have held that, when a claim is submitted based on a patient's DRG, the materiality requirement of the FCA cannot be met. See *United States ex rel. Kennedy v. Aventis Pharms., Inc.,*

2008 WL 5211021 (N.D.Ill.2008); *United States ex rel. Digiovanni v. St. Joseph's/Candler Health Sys., Inc.,* 2008 WL 395012 (S.D.Ga.2008); *United States ex rel. Magid v. Wilderman,* 2004 WL 945153 (E.D.Pa.2004); *United States ex rel. Schell v. Battle Creek Health Sys.,* 2004 WL 784978 (W.D.Mich.2004). As these courts noted, the itemized costs on the claim submitted to Medicare are irrelevant because the hospital receives a fixed fee under the PPS system. *Aventis Pharms.,* 2008 WL 5211021 at *3; *St. Joseph's/Candler Health Sys.,* 2008 WL 395012 at **5–6; *Wilderman,* 2004 WL 945153 at *8; *Battle Creek Health Sys.,* 2004 WL 784978 at *4. An individual charge has no effect on the overall payment amount. In other words, "[b]ecause the PPS system pays a standard rate based on the patient diagnosis and the DRG code, the itemized charges on a patient's bill are immaterial to the amount of reimbursement a provider receives." *St. Joseph's/Candler Health Sys.,* 2008 WL 395012 at *6.

However, Relators point to another provision in the Medicare statute that states investigational devices are not covered by Medicare. *See* 42 C.F.R. § 411.15 ("The following services are excluded from coverage: ... experimental or investigational devices."). While the interaction between this section and the PPS system is not clear, the Federal Register preamble to the DRG regulations states that existence of some element of noncovered care will not negate DRG payment as long as the primary services are covered:

> It should be noted in this regard that only if the *sole or primary* services (beyond routine care) provided to a patient are noncovered will the admission (and therefore prospective payment) be denied. This means that as long as an

acceptable or proven diagnostic or treatment course (for the DRG) is present, even if noncovered care is also present, the payment will be made.

48 Fed.Reg. 39752, 39787 (Sept. 1, 1983) (emphasis in original).

 Here, the primary services were hernia repair. Under the Federal Register explanation, DRG payment for hernia repair can be made even if some noncovered care, i.e., use of Permacol, was present. Therefore, even if Relators' allegations regarding the fraudulently induced off-label uses of Permacol are true, the Permacol use would not have impacted the amount of reimbursement for the hernia repairs. Under the PPS system, Medicare would have paid the same DRG amount if Permacol was used on-label, off-label, or if an entirely different product were used. Therefore, Relators can meet neither of the materiality standards used by the circuit courts of appeal. The false representations regarding Permacol's approved uses were not used to satisfy a prerequisite to government payment; the DRG payment amount does not depend on the patient's itemized charges. Nor was the alleged off-label use of Permacol capable of influencing the Medicare payment decision. Accordingly, the false and fraudulent statements alleged by Relators were not material to the payment decision.

The other regulatory commentary cited to by Relators does not demand a different result here, as it fails to contradict the Department of Health and Human Services' above-cited explanation. *See* 60 Fed.Reg. 48417. In addition, the cases Relators cite in support of their argument are distinguishable from the case at bar. The *Svidler* case does not deal with reimbursement under the DRG system, which is the key issue here. *See Svidler v. Dep't*

*of Health and Human Servs.,* 2004 WL 2005781 (N.C.Cal.2004). The *Crist* case dealt with the alleged presentment of false claims for reimbursement for research costs associated with for-profit drug studies. *United States ex rel. Morris v. Crist,* 2000 WL 432781 at *1 (S.D.Ohio 2000). The relator in that case alleged that the claims for payment were false because "they were for extra expenses over and above those related to the usual patient care" and were for costs that should have been covered by the pharmaceutical companies. *Id.* (quoting relator's brief). The court found that, even though the hospital was reimbursed through a DRG payment, a reasonable jury could find that the hospital should have offset the drug study charges as non-allowable. *Id.* at *6.

Here, the allegedly fraudulent charges were directly related to the relevant patient care; use of Permacol was part of the hernia repairs, not an "extra" expense. Accordingly, the Court finds that *Crist* is distinguishable from the case at bar. Because the hospitals were reimbursed through DRG payments, Relators cannot prove that off-label Permacol use was material to the government payment decision. Relators have failed to meet the materiality requirement, and their complaint is subject to dismissal on this count.

2. Veterans Administration and U.S. Army Claim Submissions

■ These claims are subject to dismissal under Rule 9(b) for failure to plead fraud with particularity. The Relators allege only which sales representatives sold Permacol to Veterans Administration and Army medical facilities and that the sales involved assertion of the off-label claims. *See* [Doc. # 16 at ¶¶ 77–87]. The Amended Complaint does not identify who purchased the Permacol, in which surgeries the Permacol was used and whether the use was off-label, or why the surgeons elected to use Permacol. *See id.* In regard to the sales of Permacol to facilities in Ohio, Washington, and Alabama, there are no specific allegations regarding a causal link between TSL representatives' statements and the purchase or use of Permacol. While the Amended Complaint does provide product numbers for the pieces of Permacol sold, it still lacks "the content and manner in which [the false] statements misled the [surgeons]," which is required in order to satisfy Rule 9(b). *Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1380–81 (11th Cir.1997).

In regard to sales of Permacol to Eisenhower Army Medical Center ("EAMC"), the only alleged causal connection is an article describing the EAMC's use of Permacol. *Id.* at ¶¶ 81, 82. While this allegation might be sufficient to withstand a Rule 12(b)(6) motion to dismiss, it cannot meet the Rule 9(b) standard. The Amended Complaint does not identify which EAMC surgeons chose to use Permacol and why. The statement that "[i]n all cases, the decision to use Permacol was based on the concern that if a prosthetic mesh was used, it would become infected," is too conclusory to satisfy the Rule 9(b) standard. *See Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1067–68 (11th Cir.2007) (conclusory allegation that receivership entities knew policies had been fraudulently procured was, without more, insufficient under Rule 9(b)). In addition, as above, the Amended Complaint lacks factual allegations regarding the content and manner in which the false statements misled EAMC personnel. Accordingly, the allegations regarding submission of false claims to Veterans Administration and U.S. Army medical facilities have not

been pled with sufficient particularity under Rule 9(b). These claims are subject to dismissal.

IV. *Conclusion*

The Court has carefully considered the parties' filings. TSL's motion to dismiss is GRANTED. Relators' claims are DISMISSED.