[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14275
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 18, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-80900-CV-DMM

UNITED STATES OF AMERICA,
ex rel. Laika Sanchez,

Plaintiff,

LAIKA SANCHEZ,

Plaintiff-Appellant,

versus

LYMPHATX, INC.,
PAMELA COHEN,
JACOB COHEN,

Defendants-Appellees,

LYMPHATICS PLUS OF BOCA
RATON, INC., etc.

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 18, 2010)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Laika Sanchez appeals from the district court's order dismissing her *qui tam* complaint on behalf of the United States against Lymphatx and its owners for violations of the False Claims Act, 31 U.S.C. §§ 3729–30.[1] The district court concluded that Sanchez had failed to plead her allegations of fraud with the particularity required by Federal Rule of Civil Procedure 9(b) and that she had failed to state a claim for retaliation under 31 U.S.C. § 3730(h). Sanchez argues that the district court erred in dismissing her complaint for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and in closing her case without granting her leave to amend. Having carefully reviewed the record in this case, we affirm in part, reverse in part, and remand.

---

[1] Title 31, Section 3730(b) of the U.S. Code empowers private persons ("relators") to sue in the name of the government when it has suffered fraud.

After the United States declined to intervene in her *qui tam* action, Sanchez served an amended complaint on Lymphatx, her former employer, and its owners. The complaint asserted five claims for relief under the False Claims Act. Four of the claims depended on Sanchez's allegations of the defendants' fraudulent Medicare-billing practices under § 3729. The fifth claim, under § 3730(h), was that Sanchez had been fired in retaliation for her complaints to Lymphatx's owners about the illegality of those practices. We review the district court's dismissal of these claims *de novo*. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## I. *Fraudulent Billing Claims*

To state a claim premised on fraud, Sanchez needed to "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b); *see also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002) ("Rule 9(b) does apply to actions under the False Claims Act."). In her complaint, Sanchez alleged that the defendants had knowingly submitted false claims to Medicare for lymphedema treatments performed by massage therapists.[2]

---

[2] Lymphedema is swelling caused by impairments in the body's lymphatic system. One treatment for the condition involves light massage to encourage the drainage of excess fluid. Medicare will not pay for this treatment if it is provided by a massage therapist. *See* 69 Fed. Reg. 66236, 66351 (Nov. 15, 2004) ("Medicare does not, for example, [cover] therapy services performed by massage therapists . . . ."); Medicare Claims Processing Manual ch. 5 p. 31 (Apr. 24, 2009) (defining manual lymphatic drainage (CPT code 97140) as a "therapy service").

Sanchez further alleged that the defendants had intentionally billed Medicare for services they did not provide and that she had gained personal knowledge of these billing practices through her employment as Lymphatx's office manager.[3]

In addition to her general accusations of false billing, Sanchez needed to plead "facts as to time, place, and substance of the defendants' alleged fraud, specifically, the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Clausen*, 290 F.3d at 1310 (quotation marks and citation omitted). Despite her assertion that she had direct knowledge of the defendants' billing and patient records, however, Sanchez failed to provide any specific details regarding either the dates on or the frequency with which the defendants submitted false claims, the amounts of those claims, or the patients whose treatment served as the basis for the claims. Without these or similar details, Sanchez's complaint lacks the "indicia of reliability" necessary under Rule 9(b) to support her conclusory allegations of wrongdoing. *See Clausen*, 290 F.3d at 1311–12. In other words, because she failed "to allege at least some examples of actual false claims," Sanchez could not "lay a complete foundation for the rest

---

[3] The defendants dispute whether Sanchez was, in fact, an office manager, but on our *de novo* review of an order dismissing a complaint for failure to state a claim, we assume the truth of all facts alleged in the complaint. *Corsello*, 428 F.3d at 1012.

of [her] allegations." *Id.* at 1314 n.25. The district court therefore appropriately dismissed the four claims alleging fraudulent billing.[4]

We reject Sanchez's argument that the district court should have allowed her to amend her complaint before dismissing these claims. "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend []or requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*). Sanchez was represented by counsel but did not move for leave to amend, and we cannot conclude that the district court abused its discretion by failing to grant leave that was never requested. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999).

---

[4] We distinguish this case from *United States ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005), in which we affirmed the denial of a motion to dismiss a *qui tam* plaintiff's complaint. The plaintiff in that case was a nurse practitioner who alleged a practice of fraudulent Medicare billing by her former employer. Specifically, she alleged that the defendant's office administrator had told her that the defendant billed Medicare at arguably inflated rates. Sanchez's vague allegations that she "found [unspecified] documentation" and "discovered" or "learned" that the defendants had submitted false claims, by contrast, leaves us "wondering whether [she] has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit," *Clausen*, 290 F.3d at 1313. In any event, to the extent that *Walker* conflicts with the specificity requirements of *Clausen*, our prior-panel-precedent rule requires us to follow *Clausen*. *See Walker v. Mortham*, 158 F.3d 1177, 1188–89 (11th Cir. 1998).

## II. *Retaliatory Discharge Claim*

With respect to Sanchez's claim for retaliatory discharge, at the time of her termination the False Claims Act provided relief to any employee discharged because of lawful acts taken "in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h) (2006), *amended by* Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624–25 (2009).[5] Sanchez argues that she engaged in conduct protected by § 3730(h) because, as alleged in her complaint, she "complained again and again about the unlawful actions of the Defendants" and "told them that they were all incurring significant criminal and civil liability." In *Childree v. UAP/GA AG Chem., Inc.*, we held that § 3730(h) only protected an employee from retaliation when there was at least "a distinct possibility" of litigation under the False Claims Act at the time of the employee's actions. 92 F.3d 1140, 1146 (11th Cir. 1996).[6] The question here, then, is whether

---

[5] Congress's recent amendment provides relief to any employee discharged for acting "in furtherance of *other efforts* to stop 1 or more violations of this subchapter." Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624–25 (2009) (emphasis added). We need not consider the effect of this change on the viability of Sanchez's claim because the amendment only applies to conduct on or after May 20, 2009. *See id.* § 4(f), 123 Stat. at 1625. Lymphatx fired Sanchez in 2007.

[6] Our decision in *Childree* does not require that this litigation would have ended with the government recovering from the defendant. Section 3730(h) "protects an employee's conduct even if the target of an investigation or action to be filed was innocent." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005).

6

Sanchez's complaints of illegal activity occurred when there was a distinct possibility that she or the government would sue the defendants under the False Claims Act. *See id.*

The defendants compare Sanchez's conduct to the sort of internal reporting that some of our sister circuits have held falls outside the scope of § 3730(h). *See, e.g.*, *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000) ("[Section § 3730(h)'s] 'in furtherance of' language requires more than merely reporting wrongdoing to supervisors."); *Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) ("Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that Zahodnick was acting 'in furtherance of' a *qui tam* action."). But those courts have also recognized that an employee may put her employer on notice of possible False Claims Act litigation by making internal reports that alert the employer to fraudulent or illegal conduct. *McKenzie*, 219 F.3d at 516 ("Although internal reporting may constitute protected activity, the internal reports must allege fraud on the government."); *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999) ("[C]haracterizing the employer's conduct as illegal or fraudulent . . . let[s] the employer know, regardless of whether the employee's job duties include investigating potential fraud, that litigation is a reasonable

7

possibility."). If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h). *Cf. Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1314 (M.D. Ala. 1999) (using a similar standard on consideration of a motion for summary judgment).

Sanchez's allegations that she complained about the defendants' "unlawful actions" and warned them that they were "incurring significant criminal and civil liability" would have been sufficient, if proven, to support a reasonable conclusion that the defendants were aware of the possibility of litigation under the False Claims Act. Because her retaliation claim did not depend on allegations of fraud, Sanchez's complaint only needed "a short and plain statement of the claim showing that [she was] entitled to relief." Fed. R. Civ. P. 8(a). We conclude that she satisfied this requirement and that the district court therefore erred in dismissing her claim for retaliatory discharge.

### III. *Conclusion*

In light of our conclusion that Sanchez failed to state claims premised on fraudulent billing but successfully stated a claim for retaliatory discharge under

8

§ 3730(h), we **AFFIRM** the district court's order in part, **REVERSE** in part, and

**REMAND** for further proceedings consistent with this opinion.