[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16670

_____

D.C. Docket No. 8:10-cv-01061-JSM-TGW

UNITED STATES OF AMERICA, et al.,

Plaintiff,

NANCY CHASE,
ex rel.,

Plaintiff-Appellant,

versus

HPC HEALTHCARE, INC.,
a Florida corporation,

Defendant,

LIFEPATH HOSPICE, INC.,
a Florida corporation,
GOOD SHEPHERD HOSPICE, INC.,
a Florida corporation,
MOBILE PHYSICIAN SERVICES, P.A.,
a Florida Professional Association,
CHAPTERS HEALTH, INC.,
a Florida corporation,
RONALD SCHONWETTER, M.D.,
CHAPTER HEALTH SYSTEMS, INC., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 24, 2018)

Before TJOFLAT and MARTIN, Circuit Judges, and MURPHY,* District Judge.

MARTIN, Circuit Judge:

In this qui tam action, relator Nancy Chase appeals from the District Court's dismissal of her complaint alleging that several health care providers violated the federal and Florida False Claims Acts. The District Court dismissed the complaint for failure to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) for claims alleging fraud. It also ruled that the complaint failed to state a claim with respect to Ms. Chase's conspiracy and retaliation claims. Ms. Chase now appeals both the dismissal of her complaint and the denial of her request to file an amended complaint. After careful review, we affirm.

## I. BACKGROUND

A. THE PARTIES

The admission and billing practices of Defendant Chapters Health System, Inc., ("Chapters") and its subsidiaries are at issue in this case. Chapters is a Florida non-profit that provides hospice services. It has three subsidiaries:

_____

* Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

2

Chapters Health, Inc., LifePath Hospice, Inc., and Good Shepherd Hospice, Inc. Chapters Health manages and coordinates the activities of Chapters Health System and its entities. LifePath and Good Shepherd provide hospice and palliative care services. Collectively, these defendants are the "Chapters Defendants."[1] Approximately 80 percent of the Chapters Defendants' patients are Medicare or Medicaid beneficiaries.

JSA Healthcare Corporation, Sunrise Senior Living Services, Inc., and Superior Residences, Inc., are for-profit health care and assisted living providers. Mobile Physician Services, P.A., is a for-profit provider of at-home health care. These providers referred patients to Chapters for hospice services. Collectively, these defendants are the "Referral Defendants."

Ms. Chase, the relator, is a licensed social worker. From 1992 to 2012, she was employed by LifePath. During her employment with LifePath, she worked as a social services specialist, patient/family counselor, and psychosocial consultant. As a psychosocial consultant from 1994 to 2009, Ms. Chase's primary responsibilities included "training counselors, providing clinical supervision towards licensure, providing consultation to entire teams regarding counselor functions, dealing with any difficult or challenging cases, and providing leadership input in the

---

[1] The complaint also names as defendants several people who worked for Chapters and its subsidiaries.

3

psychosocial capacity." Ms. Chase also served on LifePath's ethics committee and a committee that developed corporate policies. In 2012, she was fired.

## B.  THE ALLEGATIONS

In her complaint, Ms. Chase alleges that the Chapters Defendants fraudulently billed Medicare and Medicaid by admitting and recertifying patients who were not eligible for hospice care.  Specifically, she alleges that the Chapters Defendants engaged in six schemes that resulted in false claims being made to the government.  Ms. Chase identifies the schemes as (1) providing hospice care to ineligible patients; (2) providing hospice care to patients without properly executed documentation; (3) providing patients higher levels of care than medically necessary; (4) falsifying documents and patient records to conceal patient ineligibility for hospice services; (5) submitting claims for services that were not provided; and (6) providing services that were not in keeping with patient care plans. In addition, Ms. Chase alleges that Chapters unlawfully gave incentives to the Referral Defendants in exchange for their referral of patients for hospice care. Finally, Ms. Chase says that her former employer LifePath retaliated against her for pointing out the alleged fraud.

## C.  PROCEDURAL HISTORY

Ms. Chase filed this lawsuit under seal in 2010. She amended her complaint three times to add allegations and parties in September 2010, May 2012, and

4

August 2012.   In 2015, the United States and the State of Florida declined to intervene on Ms. Chase's behalf.  Then in March 2016, Ms. Chase filed a fourth amended complaint, which was served on the defendants and is the operative complaint in this case.  The complaint made five claims: (1) the submission of false claims in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and the analogous Florida False Claims Act, Fla. Stat. § 68.082(2)(a); (2) making or using false statements or records material to false claims in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) and the Florida False Claims Act, Fla. Stat. § 68.082(2)(b); (3) conspiracy to commit violations of the False Claims Act and Florida False Claims Act; (4) retaliation by LifePath, in violation of 31 U.S.C. § 3730(h); and (5) discrimination by LifePath, in violation of Fla. Stat. § 68.088.[2]

The defendants moved to dismiss all counts.  Then on September 22, 2016, the District Court dismissed the complaint with prejudice.  It found the complaint failed to meet the heightened pleading requirement for claims alleging fraud under Federal Rule of Civil Procedure 9(b) and dismissed the counts alleging substantive violations of the federal and Florida False Claims Acts.  It also found that the complaint failed to state a claim for the remaining counts of conspiracy, retaliation, and discrimination.  The court dismissed the complaint with prejudice because it

---

[2] The District Court determined that the Florida False Claims Act mirrored the federal False Claims Act, so there was no need to address them separately.  Ms. Chase does not challenge this as error on appeal or otherwise argue that her state law claims should be analyzed differently from her federal law claims.  We therefore address only her federal claims.

5

found that Ms. Chase had repeatedly failed to cure deficiencies in her complaint and further amendment would be futile.  This appeal followed.

## II.  STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss for failure to state a claim.  Starship Enters. of Atlanta, Inc. v. Coweta Cty., 708 F.3d 1243, 1252 (11th Cir. 2013).  We accept the facts alleged in the complaint as true and construe all inferences in the light most favorable to the plaintiff.  Id. We review a district court's denial of leave to amend for an abuse of discretion. Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam). However, we review de novo the underlying legal conclusion of whether a particular amendment to the complaint would be futile.  Id.

## III.  DISCUSSION

### A. FALSE CLAIMS

Any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable under the False Claims Act.  31 U.S.C. § 3729(a)(1)(A)–(B).[3]  A "claim" includes direct requests for government payment as well as

---

[3] In 2009, Congress amended and renumbered the False Claims Act via the Fraud Enforcement and Recovery Act ("FERA"), Pub. L. No. 111–21, § 4, 123 Stat. 1617, 1621 (2009).  The complaint alleges conduct that falls on either side of FERA's effective date.  But

6

reimbursement requests made under a federal benefits program.  Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1996 (2016); see 31 U.S.C. § 3729(b)(2)(A).  "Liability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies."  Corsello, 428 F.3d at 1012.  In the healthcare context, a False Claims Act violation typically involves billing for services not provided or not medically necessary.  E.g., U.S. ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302 (11th Cir. 2010) (per curiam); U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1303 (11th Cir. 2002).  But a provider may also be liable under the False Claims Act if it falsely certifies that it is in compliance with federal health care laws that are a condition of payment.  See McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc., 423 F.3d 1256, 1259–60 (11th Cir. 2005); see also Universal Health Servs., 136 S. Ct. at 1996 ("A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act.").  Ms. Chase alleges that the defendants submitted false claims by fraudulently billing for certain hospice services and by falsely certifying compliance with federal health care laws.

---

because Ms. Chase's complaint and briefing cite only to the amended version of the statute, we analyze her claims under the current version.

7

At the pleading stage, a complaint alleging violations of the False Claims Act must satisfy two requirements.  First, the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal, a complaint must contain enough specific factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).  Second, the complaint must satisfy Rule 9(b)'s heightened pleading requirement for claims alleging fraud.  That is, it must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); see Clausen, 290 F.3d at 1308–09 (holding Rule 9(b) applies to False Claims Act claims).  Under Rule 9(b), the plaintiff must plead "facts as to time, place, and substance of the defendant's alleged fraud," including "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  Clausen, 290 F.3d at 1310 (quotation omitted).

The District Court concluded that Ms. Chase's complaint failed to meet Rule 9(b)'s heightened pleading standard for claims alleging fraud.  The court acknowledged that Ms. Chase had "describe[d] a private scheme in detail" regarding "disturbing medical practices," but it ruled that she had failed to satisfy Rule 9(b) with her conclusory allegations that false claims were submitted as a

8

result of that scheme.  We conclude that the District Court properly dismissed these claims.

The submission of a false claim is "the sine qua non of a False Claims Act violation."  Clausen, 290 F.3d at 1311.  "Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances."  Corsello, 428 F.3d at 1013.  Therefore, unless a relator alleges with particularity that false claims were actually submitted to the government, our precedent holds that dismissal is proper.  See Clausen, 290 F.3d at 1311 (explaining that a plaintiff cannot "merely [] describe a private scheme in detail but then [] allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government").

The key inquiry is whether the complaint includes "some indicia of reliability" to support the allegation that an actual false claim was submitted.  Id. One way to satisfy this requirement is by alleging the details of false claims by providing specific billing information—such as dates, times, and amounts of actual false claims or copies of bills.  See Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1326 (11th Cir. 2009); United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358 (11th Cir. 2006).  In other circumstances, this Court has deemed indicia of

9

reliability sufficient where the relator alleged direct knowledge of the defendants' submission of false claims based on her own experiences and on information she learned in the course of her employment.  See U.S. ex rel. Walker v. R&F Props. of Lake Cty., Inc., 433 F.3d 1349, 1360 (11th Cir. 2005) (holding that Rule 9(b) was satisfied where the relator was a nurse practitioner in the defendant's employ who was required to bill under a doctor's provider number and whose conversations about the defendant's billing practices with the office manager formed the basis for the relator's belief that fraudulent claims were actually submitted to the government).  However, the basis of this direct knowledge must be pled with particularity.  See Sanchez, 596 F.3d at 1302–03 & n.4.

Ms. Chase's complaint lacked the "indicia of reliability" required by this Court's precedent because it did not include the underlying factual bases for her assertions.  The complaint alleges that Chapters admitted ineligible patients for hospice care, delayed discharges when patients were no longer eligible for care, billed for improperly elevated levels of care or care not provided, falsified certain documents and patient records to conceal these practices, and made false claims as a result of this conduct.  But the complaint does not give examples of specific patients who were ineligible for care, details about why they were ineligible, who at Chapters made particular falsifications, when the falsifications occurred, or when the fraudulent bills were submitted to Medicare.  See Clausen, 290 F.3d at

10

1310 (explaining that to satisfy Rule 9(b), "a plaintiff must plead facts as to time, place, and substance of the defendant[s'] alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them") (quotation omitted).  This Court has explained that a relator may not simply "portray[] the scheme and then summarily conclude[] that the defendants submitted false claims to the government for reimbursement."  Atkins, 470 F.3d at 1359.

Although Ms. Chase details a scheme, her complaint does not include specific examples of the conduct she describes or allege the submission of any specific fraudulent claim.  Neither does Ms. Chase allege the basis of her knowledge of the defendants' fraudulent billing practices—a process she was far removed from as a social worker.  See id. (affirming dismissal of complaint despite inclusion of specific examples of patients, dates, and services because relator lacked direct knowledge of defendants' submissions of false claims);  cf. Walker, 433 F.3d at 1360.  In light of all these deficiencies, we conclude that Ms. Chase failed to provide the required "indicia of reliability" to support her allegations of false claims for hospice services.

We also conclude that Ms. Chase did not adequately plead a False Claims Act violation predicated on illegal kickbacks under a false certification theory. The complaint alleged that the defendants falsely certified that they were in

11

compliance with the Anti-Kickback statute and the Stark law.  The Anti-Kickback statute prohibits a healthcare provider from financially inducing a person to refer a Medicare patient, and it likewise prohibits that person from receiving any remuneration in exchange for the referral.  42 U.S.C. § 1320a-7b(b)(1), (b)(2).  The Stark law prohibits "a physician" from referring Medicare patients to a healthcare provider if the doctor has a "financial relationship" with that provider.  42 U.S.C. § 1395nn(a)(1)(A).

Ms. Chase alleged that the Referral Defendants engaged in separate kickback schemes with the Chapters Defendants, whereby Chapters conferred certain benefits on the Referral Defendants in exchange for patient referrals in violation of federal law.  But her allegations fall far short of satisfying Rule 9(b).  For example, she fails to identify a single individual from Sunrise, JSA, or Superior who made a referral to Chapters in exchange for a benefit, a single patient that was improperly referred, who at Chapters provided the bribes, or when those exchanges took place.  See Clausen, 290 F.3d at 1310.  Ms. Chase also alleged that Chapters and Mobile Physicians Services (owned by LifePath's medical director) improperly referred ineligible patients to each other.  But she again fails to allege any specific facts supporting this conclusory allegation.  Without details to support her conclusory allegations of wrongdoing, Ms. Chase's complaint lacks the

12

necessary "indicia of reliability" under Rule 9(b).  We therefore affirm the dismissal of the substantive False Claims Act counts.

## B. CONSPIRACY

Ms. Chase also alleged that the defendants violated the False Claims Act's conspiracy provision.  Section 3729(a)(1)(C) imposes liability on any person who conspires to commit a violation of the Act.  31 U.S.C. § 3729(a)(1)(C).  To state a claim of conspiracy to violate the False Claims Act, the plaintiff must allege (1) an unlawful agreement between defendants to commit a violation of § 3729(a)(1); (2) an act performed in furtherance of the conspiracy; and (3) that the United States suffered damages as a result.  See Corsello, 428 F.3d at 1014 (interpreting the pre-amendment version of the statute); 31 U.S.C. § 3729(a)(1)(C).[4]  Rule 9(b)'s heightened pleading standard applies to claims brought under the conspiracy provision.  Corsello, 428 F.3d at 1014.

The District Court dismissed the conspiracy claim saying that the complaint failed to allege an agreement to defraud the government.  We agree.  Ms. Chase's complaint alleged merely that "Defendants knowingly conspired with each other" to violate §§ 3729(a)(1)(A) and  3729(a)(1)(B) of the False Claims Act.  On appeal, Ms. Chase argues that she sufficiently alleged an agreement between the

---

[4] It is not clear whether damages remain a required element under the new conspiracy provision following the 2009 amendments.  See John T. Boese, Civil False Claims and Qui Tam Actions, § 2.01(F) (4th ed. 2011).  We need not answer that question here, though, because we conclude that Ms. Chase failed to sufficiently allege an agreement between the defendants.

13

Chapters Defendants and each of the Referral Defendants. But the complaint fails to identify the people from any of the Referral Defendants involved in the agreement or any specific facts that show an agreement to violate the False Claims Act. We therefore conclude that she falls far short of stating a conspiracy claim. Compare Corsello, 428 F.3d at 1014 (dismissing conspiracy claim where the "bare legal conclusion" that defendants "conspired to defraud the Government" was not supported by specific factual allegations that they had entered an agreement), with U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 193–94 (5th Cir. 2009) (relying on "specific language" between two named coconspirators made during a particular meeting where the relator was present to conclude that the plaintiff had sufficiently alleged an unlawful agreement).

## C. RETALIATION

In order to show retaliation under the False Claims Act, the plaintiff must show that she was "discriminated against in the terms and conditions of [her] employment" for engaging in protected activity.[5] 31 U.S.C. § 3730(h)(1). Unlawful discrimination includes discharge, demotion, suspension, threats, and harassment. Id. The False Claims Act defines protected activity as "lawful acts

---

[5] The District Court treated the requirement for showing retaliation under the federal False Claims Act as identical to the requirement for showing discrimination under the Florida False Claims Act. See Fla. Stat. § 68.088 (prohibiting discrimination by an employer against an employee "because of" the employee's protected activity). Ms. Chase does not challenge this as error on appeal. We therefore assume, without deciding, that the District Court was correct to treat these claims the same.

14

done by the employee . . . in furtherance of an action under [the False Claims Act] or other efforts to stop 1 or more violations of [the False Claims Act]." Id. To show retaliation, the plaintiff must establish a causal connection between the retaliation and the protected activity; that is, she must show that the retaliation was "because of" the protected activity. Id. This requires the plaintiff to show that the employer was at least aware of the protected activity. Sanchez, 596 F.3d at 1304.

In the section of her complaint asserting her retaliation claim, Ms. Chase alleged that she was demoted in 2009 "because she raised ethical issues concerning violations of the Acts." She also alleged that she was removed from two committees and later fired after she raised ethical concerns about the failure to honor patients' advance medical directives. Ms. Chase alleged that her demotion, her removal from committees, and her termination all constituted unlawful retaliation.

The District Court correctly found that Ms. Chase's raising of ethical concerns about adherence to advance medical directives was not protected activity because this conduct is not related to a False Claims Act violation. We also agree that Ms. Chase's allegation that she was demoted "because she raised ethical issues concerning violations of the [False Claims] Acts" is a legal conclusion that fails to satisfy federal pleading requirements. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of

15

the elements of a cause of action will not do.") (quotation omitted).  Finally, we reject Ms. Chase's argument that she sufficiently pled her retaliation claim by alleging—in a different section of her complaint unrelated to the retaliation claim—that she "objected to the default enrollment" of certain patients and noted specific Medicare and Medicaid requirements.  Even assuming that this objection constituted protected activity, Ms. Chase failed to plead a causal link between that objection and any of the actions she alleged constituted retaliation (i.e., her demotion, her removal from committees, or her termination).  And the complaint is devoid of any allegations that the decision-makers at LifePath were aware of this objection.  See Sanchez, 596 F.3d at 1304; U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C. Cir. 1998) (stating that "because of" language in § 3730(h)(1) requires the employee to show that the employer had knowledge of the protected activity and was motivated to retaliate, at least in part, by the protected activity).  We therefore conclude that the District Court properly dismissed the retaliation and discrimination claims.

## D. DENIAL OF LEAVE TO AMEND THE COMPLAINT

Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But a district court need not allow an amendment if (1) there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies in previous amendments;

16

(2) allowing amendment would cause undue prejudice to the defendant; or (3) amendment would be futile. Corsello, 428 F.3d at 1014. The District Court denied Ms. Chase leave to amend because it determined she had "repeated chances to cure the deficiencies in her complaint" but had failed to do so. It also found that any further amendments would be futile.

Ms. Chase argues she should be allowed at least one opportunity to address the deficiencies identified by the District Court because this was the first time her complaint was subjected to adversarial testing. In certain circumstances, it may be appropriate for a relator to be allowed to amend the complaint after it is first subjected to adversarial testing, but Ms. Chase's failure to properly ask for leave to amend forecloses her argument that the District Court abused its discretion. See Long v. Satz, 181 F.3d 1275, 1279–80 (11th Cir. 1999) (per curiam). To properly request leave to amend, a plaintiff must (1) file a motion for leave to amend, and (2) "either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Id. at 1279. This Court has assumed that a request to amend included in a response to a motion to dismiss (what Ms. Chase did here) is "the functional equivalent of a motion" for leave to amend. Atkins, 470 F.3d at 1362. But Ms. Chase made no attempt to satisfy the second requirement. In her response to the motion to dismiss, she did not identify any new allegations that would make amendment worthwhile. Neither has she provided further details

17

about the substance of her proposed amendments on appeal.  Because Ms. Chase did not address "how the complaint could be amended to save the meritless claim," id. (quotation omitted), we conclude that the District Court did not abuse its discretion in dismissing the complaint with prejudice.

**AFFIRMED**.