[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13673

_____

UNITED STATES OF AMERICA,
ex rel.,

                                       Plaintiff,

84PARTNERS, LLC,
Relator,

                                       Plaintiff-Appellant,

*versus*

NUFLO, INC., et al.,

                                       Defendants,

GENERAL DYNAMICS ELECTRIC BOAT,
HUNTINGTON INGALLS INDUSTRIES,

NEWPORT NEWS SHIPBUILDING DIVISION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:14-cv-01256-TJC-PDB

_____

Before BRANCH and GRANT, Circuit Judges, and HINKLE,[*] District Judge

HINKLE, District Judge:

This is a False Claims Act or "qui tam" action arising from the delivery of defective pipe fittings for installation in nuclear attack submarines. The district court dismissed the second amended complaint with prejudice for failure to plead with particularity the actual submission or payment of false claims. After careful review and with the benefit of oral argument, we affirm.

## I. Facts

For more than 20 years, the United States Navy contracted with the defendant-appellee General Dynamics Electric Boat

_____

[*] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation

Corporation ("EB") for the construction, testing, and delivery of Virginia-class nuclear attack submarines. EB in turn entered into a subcontract with the defendant-appellee Huntington Ingalls Industries, Newport News Shipbuilding Division ("NNS"). EB and NNS had a "teaming arrangement" under which they built submarines for final delivery to the Navy.

EB and NNS procured parts known as pipe fittings from Nuflo, Inc. ("Nuflo"), either directly or through a distributor, Synergy Flow Systems, LLC ("Synergy"). According to the second amended complaint—often referred to in this opinion simply as the complaint—roughly 4,000 of the 225,000 parts supplied by Nuflo were defective. Some had improper materials or welds. Others had not been properly inspected, tested, or traced through the process. These and all the other factual allegations in the complaint must be accepted as true for purposes of this appeal, construed in the light most favorable to the plaintiff. *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999).

EB or NNS discovered some of the defective parts and apparently rejected them; the complaint does not allege EB or NNS accepted parts they knew were defective. But EB and NNS failed to discover other defects. At least 42 defective parts made it into submarines delivered to the Navy. The complaint alleges this occurred because EB and NNS recklessly disregarded their oversight responsibilities, failing to heed multiple warning signs that Nuflo was delivering defective parts.

The complaint does not identify any claim for payment submitted to the Navy that included any of the 42 parts or, for that matter, any other defective parts. But the complaint alleges the Navy made interim and final payments covering all allowable costs. Allowable costs included costs incurred for parts installed on submarines delivered to the Navy.

## II. Proceedings Below

The False Claims Act allows a private party—a "relator"—to file an action on behalf of the United States. 31 U.S.C. § 3730(b). In this action the relator is the appellant 84Partners, LLC, a limited partnership whose members include Mickey Skobic and Joanne Skobic. The only other member, Peter Schilke, has died. The record does not show how his death affected his membership, and for present purposes it makes no difference.

Mr. Skobic was a Nuflo employee who, for nearly a decade, personally participated in improper welding of parts slated for delivery to EB or NNS for installation in Navy submarines. Rather than complain at that time, Mr. Skobic kept a journal of his improper welds. Ms. Skobic was a Nuflo employee whose duties included quality checks during part of the period at issue.

Mr. Schilke was an engineer employed at EB who said he was present for meetings and conversations and received documents showing that EB and NNS "accepted" "non-conforming" Nuflo parts that were either awaiting installation or had already been installed in submarines. Mr. Schilke did not say the meetings or conversations or reports showed EB and NNS *knew* the parts

were nonconforming when they were accepted. Nor did he say in what way the parts were nonconforming. Mr. Schilke listed 17 parts that had either been installed or were in EB's stock—circumstances that he said meant the parts had been accepted and were an already-incurred cost for purposes of the applicable payment system. Mr. Schilke provided this information to the Skobics and to the government during its investigation of this case, but there is no allegation he kept contemporaneous records as the events occurred.

The original complaint named four defendants: EB, NNS, Nuflo, and Nuflo's distributor, Synergy. Under the False Claims Act, the United States had the right to intervene, but it chose not to. The United States later did intervene, though, for the limited purpose of effecting a settlement between the United States and 84Partners, on one side, and Nuflo, on the other side. Based on the settlement, the district court dismissed the claims against Nuflo. 84Partners, still acting as relator, filed an amended complaint, this time naming only two defendants: EB and NNS. The government still did not intervene on the merits. Nuflo and Synergy were no longer in the case.

EB and NNS filed separate motions to dismiss the amended complaint for failure to state a claim on which relief could be granted. Following a telephonic hearing, the district court granted the motions and gave 84Partners leave to file a second amended complaint. The court said that after the extensive briefing that already had occurred, 84Partners knew the critical issues, so any

failure to state a claim in a second amended complaint was likely to result in dismissal with prejudice—that is, without leave to amend further.

84Partners filed a second amended complaint. It had 525 numbered paragraphs spanning 142 pages. It included four counts: separate false-claim counts against EB and NNS (counts 1 and 3) and separate false-statement counts against them (counts 2 and 4), as further explained below. EB and NNS again filed separate motions to dismiss for failure to state a claim. 84Partners responded that the motions should be denied. 84Partners did not assert that, if the motions were granted, 84Partners should be given leave to amend further. 84Partners did not suggest it could allege more than it had already alleged in the second amended complaint.

The district court granted the motions and dismissed the second amended complaint. With no request pending for leave to amend further, the court provided only a brief explanation for making the dismissal with prejudice: "[A]fter almost eight years and some limited discovery [84Partners] still cannot state a cause of action." In a footnote, the court said that in the hearing on the motion to dismiss the first amended complaint, the court said a second amended complaint "would be dismissed with prejudice if it did not state a cause of action." The dismissal ended the case in the district court. This is 84Partners' appeal.

### III. Pleading Standards

To survive a motion to dismiss for failure to state a claim on which relief can be granted, a complaint must include "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of such a motion, the complaint's factual allegations, though not its legal conclusions, must be accepted as true. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." When, as here, a complaint alleges fraud or mistake, Rule 9(b) goes further, requiring the complaint to "state with particularity the circumstances constituting fraud or mistake." Even under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

## IV. Standards of Review

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). This includes a dismissal for failure to allege fraud with the required particularity. We review for abuse of discretion a district court's denial of leave to amend. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## V. False Claims Act

As relevant here, the False Claims Act creates a cause of action in favor of the United States against any person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "(B) knowingly makes, uses, or

causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) & (B).

A prior version of the "false record or statement" provision—at that time numbered 3729(a)(2)—applies to claims that were not pending on or after June 7, 2008. *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1329 nn.3–4 (11th Cir. 2009). The complaint does not make clear whether its false-statement counts arise from any such claims. The provision created a cause of action against a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." *See id.* at 1327 & n.3.

A "claim," as that term is used in these provisions, includes a request or demand for payment presented to an officer, employee, or agent of the United States. 31 U.S.C. § 3729(b)(2)(A)(i). A "claim" also includes a request or demand for payment presented to a government contractor if the United States has funded or will reimburse the payment. *Id.* § 3729(b)(2)(A)(ii). There are conditions on and exceptions to these definitions, but they make no difference here.

A person presents a false claim or makes or uses a false record or statement "knowingly" if the person has "actual knowledge" that the information at issue is false, "acts in deliberate ignorance of" its truth or falsity, or "acts in reckless disregard of" its truth or falsity. *Id.* § 3729(b)(1); *see also Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015). An innocent or even negligent

false claim or misstatement is not enough. *Urquilla-Diaz*, 780 F.3d at 1058.

## VI. Merits

To state a § 3729(a)(1)(A) presentment claim, a complaint must allege (1) a false claim, (2) that the defendant presented, or caused to be presented, for payment or approval, (3) with knowledge that the claim was false. *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017). To state a § 3729(a)(1)(B) false-statement claim, a complaint must allege (1) the defendant made, or caused to be made, a false statement, (2) the defendant knew the statement was false, and (3) the statement was material to a false claim. *Id.*

To state a false-statement claim under the prior version of the statute, the old § 3729(a)(2), a complaint must allege (1) the defendant made, or caused to be made, a false statement, (2) for the purpose of getting a false claim paid or approved by the government, (3) the defendant knew the statement was false, and (4) the government paid the claim. *See Hopper*, 588 F.3d at 1327–29.

Knowledge, for this purpose, includes deliberate ignorance or reckless disregard, as set out in the statute and noted above.

As this makes clear, an essential element that must be alleged in a False Claims Act complaint is the actual presentment or payment of a false claim. *See, e.g.*, *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1275 (11th Cir. 2018); *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Indeed, *Clausen* labeled submission of a claim "the *sine qua non* of a

False Claims Act violation." *Clausen*, 290 F.3d at 1311. A false claim is essential not only under § 3729(a)(1)(A), which deals directly with false claims, but also under § 3729(a)(1)(B) and its predecessor, the old § 3729(a)(2), which deal with false records or statements. *See, e.g.*, *Phalp*, 857 F.3d at 1154; *Urquilla-Diaz*, 780 F.3d at 1052. Standing alone, a fraudulent scheme, no matter how egregious, is not enough; there must be an actual false claim.

Rule 9(b) applies to False Claims Act allegations and, as we have emphasized time and again, requires the false claim and, at least for § 3729(a)(1)(A), its presentment to be alleged with particularity. *See, e.g.*, *Clausen*, 290 F.3d at 1308–09, 1313. Rule 9(b) serves two purposes: "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). This second purpose is "especially important" in False Claims Act cases filed by relators; in such cases the rule "ensures that the relator's strong financial incentive to bring an FCA claim . . . does not precipitate the filing of frivolous suits." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006).

In affirming dismissal of a False Claims action for failure to plead presentment of a false claim with the required particularity, *Clausen* said this:

When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant['s] goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [consists of] baseless allegations used to extract settlements. This is especially so in cases involving the False Claims Act, which provides a windfall for the first person to file and permits recovery on behalf of the real victim, the Government.

*Clausen*, 290 F.3d at 1313 n.24 (citation omitted).

The complaint in *Clausen* alleged the defendant engaged in a specifically described, multifaceted, decade-long practice of performing unnecessary medical tests on residents of long-term care facilities. *Id.* at 1303. The complaint alleged bills for the tests were submitted to the government within a few days after the tests were performed. *Id.* But the complaint did not attach any bills or give their dates or amounts. *Id.* at 1305. The district court dismissed the complaint for failure to plead with particularity the actual presentment of false claims. *Id.* We affirmed and said Rule 9(b)

does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. . . . [I]f Rule 9(b) is to be adhered to, some indicia of reliability must be

> given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government.

*Id.* at 1311 (emphasis in original).

We did not say attaching a copy of a bill is always required. In *Clausen*, no "copy of a single bill or payment was provided"—and furthermore, no "amounts of charges were identified"; no "actual dates were alleged"; and no "policies about billing or even second-hand information about billing practices" were specified. *Id.* at 1312. While the opinion specifies that it does not "mandate all of this information for any of the alleged claims," plaintiffs could show none of it—and "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." *Id.* at 1312 n.21.

We followed *Clausen* in *Corsello v. Lincare*, 428 F.3d 1008 (11th Cir. 2005). There the complaint presented the same problem: a detailed description of a widespread fraudulent scheme unaccompanied by particularized allegations of the actual presentment of false claims. *Id.* at 1011. The district court dismissed the complaint, and again we affirmed: "Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government." *Id.* at 1014 (citing *Clausen*, 290 F.3d at 1311). We faulted the relator for failing to allege "the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *Id.*; *cf. United States ex rel. Sanchez v. Lynphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010).

We reached the same result in *Carrel*. There the relator alleged with considerable particularity a kickback scheme actionable under the False Claims Act. *Carrel*, 898 F.3d at 1270 (citing 42 U.S.C. § 1320a-7b(g)). But with the exception of two transactions that did not involve illegal kickbacks, the relator failed to allege with particularity the actual submission of a false claim. *Id.* at 1276–79. We said speculation that false claims "must have been submitted" and a general allegation that doing so was "standard operating procedure" were not enough. *Id. at* 1277, 1278.

This case is similar. The complaint alleges with particularity egregious underlying misconduct: Nuflo's provision of defective parts to EB or NNS for installation in nuclear attack submarines. The complaint alleges with some—but less—particularity that EB and NNS should have taken steps to prevent or correct the ongoing provision of defective parts. The complaint alleges that in failing to do so, EB and NNS acted recklessly. But like the complaints in *Clausen*, *Costello*, and *Carrel*, the complaint does not allege with particularity the actual submission of false claims—claims covering the 42 defective parts, or any other defective parts, that made it into submarines. Nor does the complaint allege with particularity that any false claim was paid. Despite having years to investigate and receiving full cooperation from the Navy, 84Partners has been unable to identify a single claim actually presented to or paid by the government.

84Partners asserts, though, that this case is different. 84Partners says the Navy was obligated to pay for parts installed in

submarines, not individually but as part of EB's overall interim and final billings, and that installation of a part in a submarine thus conclusively shows that EB billed and the Navy paid for the part. Even if we accepted this reasoning, 84Partners' allegations would still fall short. As the district court correctly noted, the complaint fails to allege with particularity what happened between Nuflo's provision of defective parts to EB or NNS, on the one hand, and the eventual installation of a small subset of those parts in submarines, on the other hand. 84Partners still has not alleged how those parts—the 42 that have been identified or any others—got past EB or NNS and into submarines.

Indeed, the complaint does not even allege whether it was EB or NNS who, despite blocking some defective parts, failed to discover the defects in any specific parts that made it into submarines. More importantly, the complaint fails to state with particularity what caused the responsible party—whether EB or NNS or both—to fail to discover those specific parts' defect. As *Clausen*, *Costello*, and *Carrel* make clear, underlying improper practices, even if fraudulent and so widespread as to constitute standard operating procedure, are not enough; a complaint must allege with particularity a connection between those practices and one or more actual claims. 84Partners has failed to meet that requirement.

The failure is understandable, because 84Partners had no reliable basis for filling the gaps in the complaint. The Skobics worked at Nuflo. They had a reliable basis for at least some of their allegations about Nuflo's misconduct. Indeed, Mr. Skobic

participated in some of it. But they did not have a reliable basis for any allegation about the critical events at EB or NNS—about how EB or NNS discovered some defects but not others. The complaint alleges Mr. Schilke, who worked at EB, was present for meetings and conversations and received documents showing that EB "accepted" "non-conforming" Nuflo parts, but this conclusory description falls far short of the required particularity. The description misses every question on the *Costello* list, including who did what, who said what, and where or when they did or said it.

In sum, here, just as in *Clausen*, *Costello*, and *Carrel*, the complaint fails to allege with particularity the necessary connection between an underlying fraudulent scheme and the actual presentment or payment of a false claim.

The cases in which we have reversed False Claims Act rulings for the defendants are not to the contrary. In both *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217 (11th Cir. 2012), and *United States ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005), the relators were personally involved in the activities at issue and alleged specific details that provided the "indicia of reliability necessary under Rule 9(b)." *Carrel*, 898 F.3d at 1276 (quoting *Sanchez*, 596 F.3d at 1302). *See Matheny*, 671 F.3d at 1225–26; *Walker*, 433 F.3d at 1360.

A case cited by 84Partners, *United States v. Hangar One, Inc.*, was a False Claims Act case brought not by a relator but directly by the government. 563 F.2d 1155, 1157 (5th Cir. 1977). Like the case at bar, *Hangar One* arose from the government's purchase of

allegedly defective materials. *Id.* But *Hangar One* did not deal with pleading standards. Nor did it deal with the requirement for actual presentation or payment of a false claim. The issue instead was whether summary judgment was properly entered for the defendant on the merits. *Id.* The Fifth Circuit, in a ruling binding here under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), said the district court improperly discounted the government's affidavits and that, when the affidavits were properly considered, the record presented a factual dispute that could not be resolved on summary judgment. *Id.* at 1157–58. The court also said the government was not required to trace the allegedly defective materials from the defendant to the point of acceptance by the government. *Id.* at 1158. But this says nothing about whether the government was required to establish a false claim, as it clearly was. Indeed, a claim could be false even if the materials were never delivered at all. What matters is not the tracing or delivery of materials but the presentation or payment of a false claim.

The second amended complaint fails to allege with particularity the actual presentation or payment of a false claim. It was properly dismissed.

## VII. Leave To Amend

84Partners never asked the district court to grant leave to file a third amended complaint. 84Partners says on appeal, though, that failing to grant leave was error. The denial of leave would not have been an abuse of discretion even had 84Partners asked for it.

84Partners attempts to excuse its failure to ask for leave by citing comments the district court made at the end of a hearing on the motions to dismiss the first amended complaint. The court said it would dismiss the first amended complaint without prejudice and would allow 84Partners to file a second amended complaint. The court provided guidance on what a second amended complaint should include—84Partners should be as specific as it could—but the court also said it was "not making any pronouncements at all." The court said that if the defendants moved to dismiss the second amended complaint and the court concluded, after careful deliberation, that the second amended complaint did not state a claim, then "I would likely dismiss it with prejudice at that point. If it does state a claim, then the case would go forward . . . ."

This was by no means a definitive ruling that 84Partners would not be given leave to amend further. Now, having not asked the district court for leave, 84Partners cannot properly complain that leave was not given. *See, e.g.*, *Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006).

More importantly, 84Partners still has not said what else it could have alleged in good faith in a third amended complaint to cure the deficiencies in the second amended complaint. A plaintiff who moves for leave to amend a complaint "must either attach a copy of the proposed amendment to the motion or set forth the substance thereof." *Id*. at 1362. A request for leave, when not set out in a motion for leave, still must comply with this requirement. *Id*.

Moreover, even when a party has tendered a proposed amended complaint in the district court, the party can challenge on appeal the denial of leave to amend only by pointing out what was different; failure to do so waives the argument. *Carrel*, 898 F.3d at 1279. 84Partners cannot point out what was different in a proposed third amended complaint because it has not proposed one.

84Partners knew, after extensive briefing and oral argument on the motions to dismiss the first amended complaint, that it was required to allege in a second amended complaint all the facts it could allege to support the assertion that EB and NNS knowingly presented an actual false claim. 84Partners did not hold back; it filed a second amended complaint with 525 numbered paragraphs spanning 142 pages. The second amended complaint was dismissed not for inartful pleading of a kind that could be cured but because 84Partners was unable to allege in good faith facts essential to a False Claims Act claim against EB or NNS. 84Partners still has been unable to point to anything more it could have alleged in good faith to cure the second amended complaint's deficiencies.

## VIII. Conclusion

The district court's dismissal of the second amended complaint with prejudice is affirmed.